## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BENJAMIN WITTES<br>1775 Massachusetts Avenue NW<br>Washington, DC 20036 | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 18-1073 |
| v. | ) ) | |
| U.S. DEPARTMENT OF STATE<br>2201 C Street, NW<br>Washington, DC 20520 | ) ) ) | |
| Defendant. | ) ) ) ) | |

## COMPLAINT

1.      On January 11, 2017, President-elect Donald Trump held a press conference to address how he planned to handle potential conflicts of interest during his presidency. Although the President-elect said that he would not divest from his businesses entirely, he said that he would resign from the Trump Organization ("Organization") and place his stake in a trust.

2.      Since his inauguration, however, President Trump has showed no signs of keeping himself at arm's length from the Organization.  According to reports, he has remained involved with the company, and is informed enough about its finances to express unease about the impact of his presidency on its future.  Watchdog groups have sounded the alarm about the conflicts of interest that could arise from this arrangement.

3.      One particularly concerning conflict is the use of the Trump International Hotel ("Hotel") in Washington, D.C.  The Hotel has been used for events hosted by the Republican Party, lobbying groups, and the U.S. Government itself.  It has also become common for foreign

dignitaries to stay at the Hotel when visiting Washington.  The Organization has resisted calls to disclose how much money it has received from foreign sources during the Administration; in fact, it would not even make public the reimbursement it gave to the U.S. Treasury meant to cover all foreign profits.

4.      The Department of State ("Department" or "State Department") regularly arranges and pays for accommodations for visiting officials.  The American public has no idea how much money the Department has given to the Organization to accommodate diplomats, heads of states, and other foreign visitors to Washington.

5.      On January 19, 2018, Plaintiff Benjamin Wittes submitted a request to the Department under the Freedom of Information Act ("FOIA") to obtain information related to reimbursements and direct payments that the Department had made for foreign officials and diplomats who had stayed at the Hotel.  The public has an important interest in knowing whether the Department of State has been furthering the President's business interests, and undermining crucial democratic norms, by steering U.S. Government funds to the Hotel.  Indeed, payment of U.S. Government funds to Trump Hotel would represent an alarming new reality: the President's monetization of the machinery of the federal government.

6.      The Department failed to respond to the Plaintiff's request within the statutory deadline.  Plaintiff brings this action against Defendant to compel compliance with FOIA, 5 U.S.C. § 552.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8.      Venue is proper in this district pursuant to § 552(a)(4)(B).

## PARTIES

9.      Plaintiff Benjamin Wittes is the editor-in-chief of *Lawfare*, an online publication

published by The Lawfare Institute, a 501(c)(3) not-for-profit educational organization in

cooperation with The Brookings Institution, a 501(c)(3) nonprofit public policy organization.

*Lawfare* is dedicated to informing public understanding on operations and activities of the

government. Plaintiff intends to give the public access to documents he obtains via this FOIA

request on *Lawfare*'s website (www.lawfareblog.com) and to provide information about and

analysis of those documents as appropriate.

10.      Defendant State Department is an agency of the federal government of the United

States and is headquartered at 2201 C Street, NW, Washington, DC 20520.  Defendant has

possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA

request.

## STATEMENT OF FACTS

11.      On January 11, 2017, President-elect Trump held a press conference promising to

insulate himself from his sprawling business empire.  At that press conference, President-elect

Trump seemed reluctant to cut himself off from the Trump Organization.  "I could actually run

my business and run government at the same time," he said.  "I don't like the way that looks but

I'd be able to do that if I wanted to."

12.      President Trump has failed to separate himself from his businesses since his

inauguration in January 2017.  He has maintained a particular interest in the performance of the

Trump International Hotel in Washington, DC.  *See* Betsy Woodruff, "Trump Inc. Had a Rough

Year, but His D.C. Hotel is Killing It," *The Daily Beast* (Dec. 28, 2017), *available at*

https://www.thedailybeast.com/trump-inc-had-a-rough-year-but-his-dc-hotel-is-killing-it.

13.     Foreign dignitaries and officials often stay at the Hotel when visiting Washington.

14.     Amid reports that foreign officials have paid for services at the Hotel, state attorneys general filed litigation alleging that payments to the Hotel by foreign governments would violate the Emoluments Clause of the Constitution.  *See* Katelyn Polantz, "Judge Allows Lawsuit Alleging Trump Took Illegal Foreign Gifts," *CNN* (Mar. 28, 2018), *available at* https://www.cnn.com/2018/03/28/politics/emoluments-lawsuit-trump-hotel/index.html.

15.     The Trump Organization has refused to disclose how much money it has received in hotel profits from foreign governments and has not publicized the details of a payment made to the U.S. Treasury that was supposed to compensate for hotel profits generated by foreign governments.  *See* Peter Overby, "Trump Pays Treasury Undisclosed Sum for Hotel Profits From Foreign Governments," *NPR* (Feb. 26, 2018), *available at* https://www.npr.org/2018/02/26/588984309/trump-pays-treasury-undisclosed-sum-for-hotel-profits-from-foreign-governments.

16.     One detail that was not disclosed about the payment made to the U.S. Treasury was whether the Organization reimbursed the U.S. Government not just for payments that were made directly by foreign officials who were staying at the Hotel or affiliated properties, but also for payments that were made to the Hotel by the State Department on behalf of foreign officials.

17.     The Department routinely pays for or reimburses accommodations for foreign diplomats, dignitaries, or other official visitors.

18.     Even if the Trump Organization is not receiving payments directly from foreign governments, the use of State Department funds to facilitate diplomatic presence at the Hotel contributes to a problem about which ethics experts have warned since President Trump took office: that "the hotel's political appeal has turned it into one giant lily pad where tourists,

lobbyists and foreign leaders can schmooze and win favor with Trump loyalists."  Katie Rogers,

"Trump Hotel at Night: Lobbyists, Cabinet Members, $60 Steaks," *New York Times* (Aug. 25,

2017), *available at* https://www.nytimes.com/2017/08/25/us/politics/trump-hotel-

washington.html.

19.     Public interest in President Trump's relationship with his business interests has

remained high throughout his presidency, as nonpartisan reports denounce the events that

continue to be held at the Hotel by foreign governments.  Julia Ainsley and Rich Gardella,

"Watchdog: Foreign Regimes, Others Spend Big at Trump Properties to 'Curry Favor,'" *NBC*

*News* (Jan. 16, 2018), *available at* https://www.nbcnews.com/politics/donald-trump/watchdog-

foreign-regimes-others-spend-big-trump-properties-curry-favor-n837851.

20.     The prospect of U.S. Government funds being steered to Trump Hotel in

connection with foreign visitors raises concerns that go beyond ordinary conflicts of interest.

The President's authority over the executive branch confers tremendous power, which is

ordinarily constrained by well-established norms as well as legal limitations.  Enlisting executive

agencies to funnel U.S. Government funds to benefit the President would pose a fundamental

challenge to our democracy by collapsing the separation between the President's personal

interests and the vast machinery of the executive branch. This risk extends beyond the baseline

potential for corruption inherent in foreign leaders or representatives perceiving an advantage in

driving revenue to the President's business.  It would also amount to the monetization of the

executive branch by the President of the United States.

*FOIA Request to State Department and Agency's Failure to Respond*

21.     On January 19, 2018, Plaintiff sent a FOIA request to Defendant State

Department.

22.    In the request, Plaintiff requested records from the State Department regarding:

1.  All records relating to the reimbursement . . . of foreign officials and diplomats, for stays at the Trump International Hotel in Washington, D.C., from January 20, 2017, until the date that a search is conducted, for records responsive to this FOIA request. This request includes, but is not limited to, communications, receipts, invoices, itineraries, and billing statements.

2.  All records relating to directly booking accommodations . . . at the Trump International Hotel in Washington, D.C. on behalf of foreign officials and diplomats, from January 20, 2017, until the date that a search is conducted for records responsive to this FOIA request. This request includes, but is not limited to, communications, receipts, invoices, itineraries, and billing statements.

3.  All records relating to . . . reimbursement of, or payment for, hotel accommodations for foreign officials and diplomats visiting Washington, D.C. This request is for policies effective from January 20, 2017, until the date that a search is conducted for records responsive to this FOIA request. This request includes, but is not limited to, policies regarding the selection of hotel, the cost of accommodations, and procedures relating to the reimbursement or payment on behalf of foreign officials or diplomats.

4.  All records relating to . . . budgeting and accounting of reimbursement of, or payment for, hotel accommodations for foreign officials and diplomats visiting Washington, D.C., from January 20, 2017, until the date that a search is conducted for records responsive to this FOIA request.

*See* Exhibit A (FOIA request).

23.    Plaintiff also requested a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) or 5 U.S.C. § 552(a)(4)(A)(ii)(II).  *Id.*

24.    Colleagues of the Plaintiff received an email from Defendant State Department dated February 12, 2018, confirming that it would now "proceed with handling" the FOIA request.  *See* Exhibit B (State Department email).

25.    The email followed a brief exchange during which Plaintiff, through colleagues, agreed to "streamline" the language of his initial request so as to make it easier for the Department to process it.  *Id.*

26.     Pursuant to FOIA, within 20 business days of receipt of Plaintiff's request, Defendant was required to "determine . . . whether to comply with such request" and to "immediately notify" Plaintiff of "such determination and the reasons therefor," and, in the case of an adverse determination, notify the Plaintiff of his appeal rights. 5 U.S.C. § 552(a)(6)(A)(i).

27.     To date, Defendant has failed to make the required determination and notifications. Nor has Defendant made a determination regarding Plaintiff's request for a fee waiver.

## COUNT I
### (Violation of FOIA, 5 U.S.C. § 552)

28.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

29.     Defendant is in violation of FOIA by failing to respond to Plaintiff's request within the statutorily prescribed time limit and by unlawfully withholding records responsive to Plaintiff's request.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1) Order Defendant, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's request;

(2) Order Defendant, by a date certain, to demonstrate that it has conducted an adequate search;

(3) Order Defendant, by a date certain, to produce to Plaintiff any and all non-exempt records, or portions of records, responsive to Plaintiff's request, as well as a *Vaughn* index of any records, or portions of records, withheld due to a claim of exemption;

(4) Enjoin Defendant from improperly withholding records responsive to Plaintiff's request;

(5) Order Defendant to grant Plaintiff's request for a fee waiver;

(6) Grant Plaintiff an award of attorney fees and other reasonable litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E); and

(7) Grant Plaintiff such other relief as the Court deems appropriate.

Respectfully submitted,

Date: May 7, 2018                    */s/ Laurence M. Schwartztol*

LAURENCE M. SCHWARTZTOL
    (*pro hac vice* to be filed)
Larry.Schwartztol@protectdemocracy.org
JUSTIN FLORENCE (Bar No. 988953)
Justin.Florence@protectdemocracy.org

The Protect Democracy Project, Inc.
10 Ware Street
Cambridge, MA 02138
Phone: 202-599-0466
Fax: 929-777-8428

Allison F. Murphy (Bar No. 975494)
The Protect Democracy Project, Inc.
2020 Pennsylvania Ave., NW #163
Washington, DC 20006
Phone: 202-599-0466
Fax: 929-777-8428

*Counsel for Plaintiff*